STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Abel SAUCEDA, Defendant-Appellant.

Supreme Court

*No. 90–1441–CR. Oral argument February 24, 1992.—Decided June 1, 1992.*

(Also reported in 485 N.W.2d 1.)

For the plaintiff-respondent-petitioner the cause was argued by *Maureen McGlynn Flanagan,* assistant attorney general, with whom on the briefs *James E. Doyle,* attorney general.

For the defendant-appellant there was a brief and oral argument by *Mark Lukoff,* assistant state public defender.

CALLOW, WILLIAM G., J. This is a review under sec. (Rule) 809.62, Stats., of a published decision of the court of appeals, *State v. Sauceda,* 163 Wis. 2d 553, 472 N.W.2d 798 (Ct. App. 1991). The court of appeals reversed in part a decision of the Kenosha county circuit court, Judge Jerold W. Breitenbach, and held that defendant-appellant Abel Sauceda's Fifth Amendment right to be free from double jeopardy was violated when he was convicted of both first and second degree sexual assault arising out of a single course of sexual conduct with a sleeping nine-year-old girl. The court of appeals remanded the case to the trial court for resentencing to be based on only one of the convictions.

The only issue raised on review is whether the defendant's convictions of first and second degree sexual

assault for sexual contact with a child twelve years of age or younger whom the defendant knows is unconscious violates the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution[1] and art. I, sec. 8 of the Wisconsin Constitution.[2] We hold that the two convictions in this case do not violate Sauceda's right to be free from double jeopardy. Under the well-established *Blockburger* test,[3] each of these offenses requires proof of an element that the other does not. Therefore, double jeopardy does not bar multiple punishment for these offenses. In addition, there is no indication of a contrary legislative intent. For these reasons, we reverse the decision of the court of appeals.

The relevant facts are not in dispute. On the evening of June 29, 1989, Abel Sauceda was babysitting his two nieces, ages seven and ten. The nieces each had a female friend over to spend the night. One of the nieces, T.K., and her friend, K.J., slept in sleeping bags on the dining room floor. K.J. was nine years old. During the night, K.J. was "half asleep" when she felt someone touching her vaginal area. She did not fully wake up and fell back asleep. Later, she awoke when she felt someone tickling her feet. She saw Sauceda lying on the floor at her feet. He appeared to be asleep. K.J.'s pajamas had been pulled up and her underpants had been removed.

---

[1]The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution states:

> . . . [N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb.

[2]Article I, sec. 8 of the Wisconsin Constitution states, in part:

> **(1)** . . . [N]o person for the same offense may be put twice in jeopardy of punishment.

[3]*Blockburger v. United States,* 284 U.S. 299 (1932).

K.J. woke T.K. and they went upstairs to wait for T.K.'s parents to return home. When the parents returned home, Sauceda was found sleeping on the dining room floor. K.J.'s underpants were found nearby.

With respect to the incident with K.J., the trial court convicted Sauceda of first degree sexual assault in violation of sec. 940.225(1)(d), Stats. 1985-86,[4] for having sexual contact with a person twelve years of age or younger and second degree sexual assault in violation of sec. 940.225(2)(d), 1985-86,[5] for having sexual contact with a person the defendant knows is unconscious.[6] Judge Breitenbach sentenced Sauceda to four years in prison for the first degree sexual assault and ten years probation for the second degree sexual assault. Sauceda filed a motion for post-conviction relief on the ground that the two convictions violated his right to be free

---

[4]Section 940.225(1), Stats. 1985-86, provides in relevant part:

> **(1)** FIRST DEGREE SEXUAL ASSAULT. Whoever does any of the following is guilty of a Class B felony:
>
> . . .
>
> (d) Has sexual contact or sexual intercourse with a person 12 years of age or younger.

[5]Section 940.225(2), Stats. 1985-86, provides in relevant part:

> **(2)** SECOND DEGREE SEXUAL ASSAULT. Whoever does any of the following is guilty of a Class C felony:
>
> . . .
>
> (d) Has sexual contact or sexual intercourse with a person who the defendant knows is unconscious.

[6]The defendant was also convicted of an additional two counts of first degree sexual assault in violation of sec. 940.225(1)(d), Stats. 1985-86, involving two of the other children that evening. However, these additional convictions are not at issue on this review.

from double jeopardy. The trial court denied Sauceda's motion. The trial court applied the *Blockburger* "elements only" test, which allows conviction of two crimes if one crime requires proof of an additional element that the other crime does not, and concluded that double jeopardy did not bar conviction on both charges.

The court of appeals, Judge Nettesheim dissenting, reversed and remanded the two convictions involving K.J., holding that Sauceda's double jeopardy rights were violated. The majority refused to apply the *Blockburger* "elements only" test, reasoning that it was relevant only when analyzing statutes under the lesser included offense doctrine. Instead, the court stated that this was a multiplicity problem and thus the *Rabe* "different fact" test should be utilized. The majority held that, although the two crimes at issue are "facially" different, both crimes share the common legal thread of inability to consent to the sexual contact. Because of this, the court held that the two crimes were the same in fact and law. In addition, the majority found that the statutory language and legislative history did not evince an intent that the violations constitute two separate offenses.

On review, the State argues that Sauceda's right to be free from double jeopardy is not violated by the convictions for first and second degree sexual assault of K.J. It contends that the *Blockburger* "elements only" test is applicable and satisfied because each offense requires proof of an element that the other does not. In response, Sauceda argues that the offenses are the same because each relates to the victim's inability to consent to the sexual contact. Sauceda contends that when the victim is unconscious, a rebuttable presumption arises that the victim could not give informed consent; when the victim is a minor, an absolute presumption arises that the victim could not give informed consent. He asserts, there-

fore, that anytime the victim of sexual assault is a minor, the limit of prosecution is first degree sexual assault.

Whether a defendant's convictions violate his double jeopardy rights under the Fifth Amendment to the United States Constitution and art. I, sec. 8 of the Wisconsin Constitution is a question of law. *State v. Kramsvogel,* 124 Wis. 2d 101, 107, 369 N.W.2d 145 (1985). Therefore, this court owes no deference to the decisions of the lower courts on this issue. *Id.*

The double jeopardy language in the Fifth Amendment and art. I, sec. 8 of the Wisconsin Constitution is almost identical and declares that no person shall be placed twice in jeopardy of punishment for the same offense. The Double Jeopardy Clause is intended to provide three protections: protection against a second prosecution for the same offense after acquittal; protection against a second prosecution for the same offense after conviction; and protection against multiple punishments for the same offense. *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969). The present case deals with the third of these protections. The scope of this constitutional protection is dependent upon the meaning of the words "same offense." In *State v. Gordon,* 111 Wis. 2d 133, 330 N.W.2d 564 (1983), we stated:

> The United States Supreme Court has determined that where a court imposes multiple punishment in a single trial for violations of two or more criminal statutes arising from the same criminal conduct, the constitutionality of the multiple punishment depends on whether the state legislature intended that the violations constitute a single offense or two offenses, that is whether the legislature intended one punishment or multiple punishment.

*Gordon,* 111 Wis. 2d at 137 (citing *North Carolina v. Pearce,* 395 U.S. 711 (1969), and *Missouri v. Hunter,* 459 U.S. 359 (1983), among others).

██

Initially, we note that the legislature permits prosecution under more than one statutory provision for the same conduct. Section 939.65, Stats.[7] The lower courts, however, seemed to be in confusion as to the applicable double jeopardy test. In order to effectively protect the double jeopardy interests of the defendant, Wisconsin utilizes a two-fold analysis to determine whether multiple punishments may be imposed upon the defendant. The first component of the test for multiplicity involves the application of the *Blockburger* "elements only" test.[8]

---

[7]Section 939.65, Stats., states:

**939.65 Prosecution under more than one section permitted.** If an act forms the basis for a crime punishable under more than one statutory provision, prosecution may proceed under any or all such provisions.

*But see also Grady v. Corbin,* 495 U.S. 508 (1990), for a discussion of the constitutional parameters in which the same conduct for which the defendant has already been prosecuted may be used to establish essential elements of an offense in a subsequent prosecution.

[8]Confusion regarding the applicable test for claims of multiplicity has arisen because of the various labels applied to the tests used by this court to determine whether the charging of particular offenses is multiplicious. An analysis of these tests demonstrates that the *Blockburger* "elements only" test, the "additional fact" or "different fact" test found in *Rabe,* and the "identical in law and fact" test of *State v. Van Meter,* 72 Wis. 2d 754, 758, 242 N.W.2d 206 (1976), are all essentially the same test. Regardless of what the test is called, the test remains whether each offense requires proof of an *additional element or fact* which the other offense or offenses do not. Multiple punishments are permissible if each offense requires proof of an additional element or fact

The *Blockburger* "elements only" test was codified under sec. 939.66(1), Stats.[9]

> Under the "elements only" test, an " 'offense is a 'lesser included' one only if all of its statutory elements can be demonstrated without proof of any fact or element in addition to those which must be proved for the 'greater' offense.' " *State v. Carrington,* 134 Wis. 2d 260, 265, 397 N.W.2d 484 (1986) (quoting *State v. Hagenkord,* 100 Wis. 2d 452, 481, 302

which the other offense or offenses do not. Conversely, multiple punishments are constitutionally barred as the "same offense" under double jeopardy if the offenses are both identical in law and identical in fact. The dissent aptly explains how the focus of the test changes with respect to particular cases. In some situations, such as the present case, where the factual circumstances underlying the offenses are the same or identical, the determinative inquiry is whether the offenses are lesser-included offenses of each other—whether each offense requires proof of an additional *element* that the other does not. In other situations, such as in *Rabe,* where a course of conduct is alleged to have constituted multiple violations of the same statutory provision, the determinative inquiry is whether each offense requires proof of an additional *fact* that the other offenses do not. The *Rabe* court recognized that even though the offenses may be identical and contained within the same statutory section, the factual circumstances may be separated in time or significantly different in nature to justify multiple punishments. *Rabe,* 96 Wis. 2d at 65–66. The dissent refuses to acknowledge that the test remains the same even though its application to particular situations may differ.

[9]Section 939.66(1), Stats., states:

**Conviction of included crime permitted.** Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included crime, but not both. An included crime may be any of the following:

(1) A crime which does not require proof of any fact in addition to those which must be provided for the crime charged.

N.W.2d 421 (1981)). "[A]n offense is not a lesser-included one if it contains an additional statutory element." *Id.* (quoting *Hagenkord,* 100 Wis. 2d at 481).

*State v. Kuntz,* 160 Wis. 2d 722, 754–55, 467 N.W.2d 531 (1991). If each charged offense is not considered a lesser included offense of the other, then this court shall presume that the legislature intended to permit cumulative punishments for both offenses. *Id.* at 755. The "elements only" test applies regardless of whether the two offenses are contained within the same or separate statutory sections. The second component of the multiplicity test involves an inquiry into other factors which would evidence a contrary legislative intent. *Id.* at 756; *State v. Rabe,* 96 Wis. 2d 48, 63, 291 N.W.2d 809 (1980).

In *Blockburger v. United States,* 284 U.S. 299 (1932), the United States Supreme Court held that where the same act constitutes a violation of two distinct statutory provisions, the test under the Double Jeopardy Clause is whether each provision requires proof of a fact which the other does not. *Blockburger,* 284 U.S. at 304. In the present case, the pertinent statutes each require proof of a fact that the other does not. Section 940.225(1)(d), Stats. 1985–86, requires the victim of the sexual assault to be twelve years of age or younger. Section 940.225(2)(d), 1985–86, requires proof that the victim of the sexual assault was unconscious and that the defendant knew that the victim was unconscious. These are completely different factual elements that must be proved, beyond a reasonable doubt, by the state. Contrary to the court of appeals' opinion and Sauceda's contention, inability to consent to the sexual contact is not a required element of either statutory provision. Section 940.225(4), 1985–86, specifically states that "[c]onsent is

not an issue in alleged violations of subs. (1)(d) and (2)(c), (d) and (e)." Therefore, the convictions for first and second degree sexual assault in this case satisfy the *Blockburger* "elements only" test. The statutes presumptively allow for multiple punishments.[10]

[10]The dissenting opinion's conclusion that while the defendant may be convicted of multiple felony offenses, the defendant may only be subject to penalty for one offense is a radical departure from the present law and practice in Wisconsin. Section 973.15(2), Stats., specifically provides that "[t]he court may impose as many sentences as there are convictions and may provide that any such sentence be concurrent with or consecutive to any other sentence imposed at the same time or previously." If the dissent is concerned about the punishment imposed upon the defendant convicted of multiple offenses, we point out that one of the options available to the sentencing judge is to impose concurrent rather than consecutive sentences upon the defendant.

The dissenting opinion at nn.5 and 6 on pages 504 and 505 cites to several cases which the dissent contends supports the proposition that present law allows for multiple convictions but limits punishment to only one of those convictions. However, the dissent misreads those cases because they in fact reinforce the majority's position that pursuant to sec. 973.15(2), Stats., a court may impose as many sentences as there are convictions, but if the jury is presented with alternate verdicts, the defendant may be found guilty and convicted on only one of the charges set forth in the alternate verdicts. The court in *State v. Karpinski,* 92 Wis. 2d 599, 611, 175 N.W.2d 729 (1979), merely reiterated the prosecuting attorney's ability to prosecute under more than one statutory provision for the same criminal conduct. In *State v. Resler,* 262 Wis. 285, 293, 55 N.W.2d 35 (1952), the court directed the circuit court to instruct the jury that in the case where a defendant is charged with (1) driving under the influence, causing death, and (2) driving in a reckless and negligent manner, causing death, the jury may find the defendant guilty on only one of the charges. Similarly, in *State v. Bohacheff,* 114 Wis. 2d 402, 417, 338 N.W.2d 466 (1983), this court held that where a defendant is

■ A contrary legislative intent may be derived from the language of the statutes, the legislative history, the nature of the proscribed conduct, and the appropriateness of multiple punishments. *Kuntz,* 160 Wis. 2d at 756. However, an analysis of these factors fails to indicate a contrary legislative intent.

The language of the statutes and their legislative history support the conclusion that the legislature intended multiple punishments for these offenses. The provisions under sec. 940.225, Stats. 1985–86, are primarily directed at protecting one's freedom from sexual assault. Its various subsections define different methods of sexual assault. The violation of any one of those subsections in no way immunizes the defendant from violating the same or any of the other subsections during the course of sexual misconduct.

For more than 35 years, the criminal offenses of sexually assaulting a minor and sexually assaulting a person incapable of communicating consent to the sexual contact or intercourse have remained separate and distinct statutory provisions. *See* secs. 944.02 and 944.10–.11, Stats. 1955, created by 1955 c. 696, which were repealed and recreated as part of sec. 940.225, Stats., by 1975 c. 184. Recently, the legislature created sec. 948.02, Stats., entitled "Sexual Assault of a Child,"

---

charged with both (1) driving while under the influence of an intoxicant, and (2) driving while having a blood alcohol count of 0.10% or more, the defendant may only be convicted and sentenced for one of the offenses. In so holding, the *Bohacheff* court rejected the possibility of allowing the court to render a judgment of multiple convictions, but limiting the punishment to only one of those convictions. Neither *Resler* nor *Bohacheff* allowed a judgment of conviction for the charges set forth on both of the alternate verdicts.

as part of a major revision and consolidation of crimes against children. Section 940.225(1)(d), Stats. 1985–86, was repealed and recreated as sec. 948.02(1), Stats. 1987 Wis. Act 332. Section 940.225(2)(d), Stats., has remained intact for the sexual assault of an unconscious person. While it may be true that a "common legal thread" with the two criminal offenses involved in this case is the inability of the victim to give informed consent to the sexual activity, the court of appeals erred in its analysis by focusing solely on the narrow issue of consent. Common sense dictates that in the case of an unconscious person the unconscious state itself, without more, presumptively prevents giving informed consent. This presumption may be rebutted by the introduction of other evidence. Section 940.225(4), Stats. With respect to a victim of sexual assault who is a minor, an inability to give informed consent to the sexual activity is an absolute presumption that may not be rebutted by other evidence. A review of the various subsections under sec. 940.225, 1985–86, and their differing punishments clearly demonstrates that inability to consent to the sexual activity is not the sole consideration for punishment.

A common legal thread for all sexual assaults is inability to consent or lack of consent to the sexual contact or intercourse. However, the legislature punishes defendants convicted of sexual assault differently based solely on the victim's age or mental state. Under sec. 940.225(1)(d), Stats. 1985–86, sexual contact with a minor twelve years of age or younger is a Class B felony punishable by up to twenty years imprisonment. Under sec. 940.225(2)(e), 1985–86, sexual contact with a minor who is over the age of twelve years and under the age of sixteen years is a Class C felony punishable by a fine and/or up to ten years imprisonment. Under sec.

940.225(2)(d), 1985-86, sexual contact with a person who the defendant knows is unconscious is also a Class C felony. Nonconsensual sexual contact with an adult under sec. 940.225(3), 1985-86, is a Class A misdemeanor punishable by a fine and/or up to nine months imprisonment. Because these offenses are punished differently, inability to consent or lack of consent is not the sole factor considered by the legislature when determining the punishment for defendants convicted of these offenses. Other factors likely included the nature of the conduct, the ability of the victim to understand the complexities and consequences involved with sexual activity, and, especially with minor victims, the potential physical and psychological harm resulting from the sexual molestation.

The nature of the proscribed conduct also supports the conclusion that the legislature intended multiple punishments. Sauceda and the court of appeals posit an interpretation of the sexual assault statute that flies in the face of precedent established by this court and sound reason. They contend that a course of sexual misconduct upon the same victim could not constitute more than one sexual assault under sec. 940.225, Stats. In stark contrast, this court held in *State v. Eisch*, 96 Wis. 2d 25, 291 N.W.2d 800 (1980), that an information charging the defendant with four counts of second degree sexual assault was not multiplicious and did not violate double jeopardy where the charges resulted from a single course of conduct against the same victim that spanned just two and one-half hours and included genital and anal intercourse, fellatio, and the insertion of an object into the victim's genitals. *Eisch*, 96 Wis. 2d at 42. The *Eisch* court stated that although the sexual misconduct may be against the same victim and during the same course of conduct, multiplicious charges do not arise if the facts

"are either separated in time or are of a significantly different nature in fact." *Id.* at 31. In the present case, the separate assaultive acts, while not separated in time, are of significantly different nature in fact.

The sexual assault of a minor and the sexual assault of an unconscious person are two separate and distinct criminal offenses. To illustrate this distinction, the following hypothetical scenario is helpful.[11] The scenario involves an attempted but unsuccessful sexual molestation of conscious Minor, a minor under the age of twelve years old, by adult Offender. Offender waits until Minor falls asleep and then molests the child. A major concern, regardless of whether the minor victim is awake or sleeping, is the potential physical and psychological harm resulting from the sexual molestation. However, an important distinction between the two events described above is the conscious state of the victim. Unlike a conscious person, an unconscious individual—adult or minor—cannot communicate by words or actions an unwillingness to enter into the sexual activity or prevent the sexual assault from occurring. It is quite possible in this instance that Sauceda never would have sexually assaulted K.J. had she not been asleep at the time. He might not have had the nerve to sexually molest a conscious person, or K.J. might have had the opportunity to avoid the sexual molestation by fleeing the situation or yelling for help. In fact, K.J. and T.K. did run upstairs to await the return of T.K.'s parents once K.J. awoke and realized what had happened. The interpretation of the sexual assault statute posited by Sauceda and the court

---

[11]This hypothetical is used only to illustrate the distinction between the options available a conscious and an unconscious individual facing a possible sexual assault. It is in no way intended to supplant or supplement the facts on the record of this case.

of appeals creates the absurd impression that the legislature intended to address only one of the two primary concerns involved here. We do not think that the legislature intended such an absurd result. An important aspect of freedom from sexual assault is a person's ability to prevent unwanted sexual contact. Even though the target of sexual aggression may be a minor, the minor possesses the ability to prevent the sexual molestation. An unconscious person no longer possesses the ability of prevention.

For the foregoing reasons, we conclude that the legislature intended that multiple punishments attend the two separate offenses. Sauceda's convictions of first and second degree sexual assault for the sexual contact with K.J. while she was sleeping are not multiplicious and, therefore, do not violate double jeopardy. Accordingly, we reverse that portion of the court of appeals' decision insofar as it holds that the convictions of Sauceda for first and second degree sexual assault of K.J. violates his right to be free from double jeopardy, and we reinstate Sauceda's sentences on both offenses as determined by the trial court.

*By the Court.*—The decision of the court of appeals is reversed.

SHIRLEY S. ABRAHAMSON, J. *(dissenting)*. The defendant was charged with violating two statutes in a single prosecution: (1) sexual contact with a child under 12 (first-degree sexual assault), and (2) sexual contact with an unconscious person (second-degree sexual assault). For each offense, the state introduced evidence of one act—the defendant's single, uninterrupted touching of the child's vagina while the child was sleeping. The defendant was convicted of and punished for violat-

ing each statute. The majority concludes that the defendant's double jeopardy guarantees have not been violated and reverses the decision of the court of appeals. I dissent.

## I.

The pronouncements of the United States Supreme Court on double jeopardy are a perplexing puzzle.[1] The majority opinion concludes that the "lower courts [in Wisconsin] seemed to be in confusion as to the applicable double jeopardy test." Majority opinion at 493. Any confusion in the circuit courts or the court of appeals will not be dissipated by the majority opinion.[2]

I disagree with the majority opinion's characterization of the elements only test from *Blockburger v. United States,* 284 U.S. 299 (1932), as "essentially the same" as the "additional fact," "different fact," or "identical in fact and law" test. Majority opinion at 493 n.8. Our cases distinguish these tests even though we have often stated the tests with imprecise language.

Wisconsin law treats the *Blockburger* test as an *elements only* test used to determine whether a given offense is a lesser included offense of another, sec. 939.66 (1), Stats. 1989–90, and to determine whether for double jeopardy purposes the two or more crimes charged are the same offense.[3] When applying the elements only test

---

[1]See Monroe G. McKay, *Double Jeopardy: Are the Pieces the Puzzle?,* 23 Washburn L.J. 1 (1983).

[2]For criticism of this state's double jeopardy and multiple punishment decisions, see Note, *Multiple Punishment in Wisconsin and the Wolske Decision: Is It Desirable to Permit Two Homicide Convictions for Causing a Single Death?,* 1990 Wis. L. Rev. 553; Note, *Critique of Wisconsin's Lesser Included Offense Rule,* 1979 Wis. L. Rev. 896, 896.

[3]*State v. Carrington,* 134 Wis. 2d 260, 263–64, 397 N.W.2d

we focus "on the statutes defining the offenses, not the facts of a given defendant's activity." *State v. Carrington,* 134 Wis. 2d 260, 264, 397 N.W.2d 484 (1986). In this case, the majority opinion is apparently applying the *Blockburger* elements only test in determining whether one crime is the lesser included offense of the other under sec. 939.66 (1) and whether the two crimes charged are the same offense under the double jeopardy guarantee.

The majority cites *State v. Rabe,* 96 Wis. 2d 48, 291 N.W.2d 809 (1980), and *State v. Van Meter,* 72 Wis. 2d 754, 242 N.W.2d 206 (1976), in which, unlike the case at bar, the accuseds each faced multiple convictions under a single statutory provision. In these cases the court searches for the legislative intent about the unit of conduct punishable. Furthermore, the court in *Rabe* and *Van Meter* applied an additional fact test, not an elements only test, because in applying a single statute the elements that the state needed to prove under each count were identical. To decide whether the state would impermissibly convict the accuseds multiple times for the same course of conduct in violation of the constitutional guarantee against double jeopardy, the *Rabe* and *Van Meter* courts needed to determine whether each charge required proof of an additional fact of the accused's conduct.[4] *Rabe* and *Van Meter* resolve a double jeopardy

484 (1986); *Hagenkord v. State,* 100 Wis. 2d 452, 481, 302 N.W.2d 421 (1981); *Randolph v. State,* 88 Wis. 2d 630, 640, 266 N.W.2d 334 (1978); Note, *Multiple Punishment in Wisconsin and the Wolske Decision: Is It Desirable to Permit Two Homicide Convictions for Causing a Single Death?,* 1990 Wis. L. Rev. 553, 560 & n.42; Note, *Critique of Wisconsin's Lesser Included Offense Rule,* 1979 Wis. L. Rev. 896, 896.

[4]In *Rabe,* reviewing a pretrial order, the court permitted the state to charge an accused with four counts of homicide by intoxi-

issue distinct from the double jeopardy issue in the case at bar and thus do not control this case.

## II.

I conclude that in this case the prosecutor could charge and attempt to prove both statutory offenses, but that the defendant would be punished for only one offense upon conviction. This conclusion comports with the statutes and judicial precedent.

Section 939.65, Stats. 1989-90, provides that "if an act forms the basis for a crime punishable under more than one statutory provision, prosecution may proceed under any or all such provisions." This statute states a rule of pleading and makes clear that the prosecutor may proceed under multiple sections of the criminal code alleging the same conduct under each statute. It does not purport to state the limitations on multiple convictions, sentences, or prosecutions for the same conduct.[5]

When the same conduct satisfies more than one criminal statute and the court concludes that the legislature intended the accused to be punished only once even though the conduct violates two or more statutes, our cases hold that the circuit court may submit all counts to the fact-finder but the accused is punished only once.[6]

cated use of a motor vehicle resulting from the deaths of four people in the same auto accident. In *Van Meter,* the court upheld two convictions for fleeing police officers, one for eluding Wood County officers and one for eluding Portage County officers in the same car chase.

[5]V Wisconsin Legislative Council Judiciary Committee Report on the Criminal Code, at 52 (1953); *State v. Karpinski,* 92 Wis. 2d 599, 611, 175 N.W.2d 729 (1979); Frank J. Remington and Allan J. Joseph, *Charging, Convicting, and Sentencing the Multiple Criminal Offender,* 1961 Wis. L. Rev. 528, 530–31.

[6] [I]f the two counts are submitted to the jury, (1) whether defen-

According to United States Supreme Court precedent, in determining the legality of multiple punishments under different statutes in a single prosecution for a single act, the determinative factor is legislative intent. Did the legislature intend one punishment or more than one punishment?[7] The state's brief concedes that the

dant operated a motor vehicle while under the influence of liquor, causing death, and (2) whether defendant operated a motor vehicle in such a reckless and negligent manner as to cause the death—the court should instruct the jury that if it finds the defendant guilty on the first count, it should make no finding on the second, and if it finds him guilty on the second, it should make no finding on the first.

*State v. Resler,* 262 Wis. 285, 293, 55 N.W.2d 35 (1952).

Section 940.25(1)(a), (b), (c), Stats. 1981–82, authorized the prosecutor to charge the accused with two counts of causing great bodily harm to another human being by operation of a motor vehicle. One count was for operation while under the influence of an intoxicant, and the second count was for operation while having a blood alcohol concentration of 0.10% or more. The statute further authorized the fact-finder to find the accused guilty of both counts. The court concluded that the dual guilty verdicts give rise, however, to only one conviction and one punishment, stating that "although these provisions of sec. 940.25 might be read to indicate that the legislature intended two convictions even if there is only one incident or occurrence, other indicia of legislative intent make it evident that the legislature authorized only one conviction for all purposes . . .." *State v. Bohacheff,* 114 Wis. 2d 402, 412, 338 N.W.2d 466 (1983).

See also Frank J. Remington and Allan J. Joseph, *Charging, Convicting, and Sentencing the Multiple Criminal Offender,* 1961 Wis. L. Rev. 528, 545–51.

[7]The question of whether two punishments are constitutionally permissible, regardless of whether the two statutes constitute the same offense, depends on whether the legislature intended one punishment or two. The focus is on legislative intent when determining the constitutionality of multiple punishments. *Missouri v.*

ultimate issue of legislative intent presented in this case is, at least theoretically, susceptible to more than one philosophical analysis. State's Brief at 29. A common-sense analysis of the sexual assault statutes leads to the conclusion that the legislature intended to punish an accused once for each sexual assault or contact perpetrated on a victim and that the legislature did not intend multiple punishments for the two statutory violations with which the defendant was charged in this case for his single act.

The statutes at issue are silent about multiple punishments for a single act of sexual contact against one victim. To determine legislative intent I must examine the language of the statute, the nature of the proscribed conduct, whether there is a single act or course of conduct, whether the two offenses are significantly different so that they may be viewed as deserving separate punishment, whether the two offenses invade different interests

---

*Hunter,* 459 U.S. 359, 368-69 (1983); *State v. Kuntz,* 160 Wis. 2d 722, 753-54, 467 N.W.2d 531 (1991); *State v. Gordon,* 111 Wis. 2d 133, 137-38, 330 N.W.2d 564 (1983).

As others have noted, the Supreme Court's formula incorporating state law by reference into the double jeopardy clause is flawed. The Supreme Court has in effect made the constitutional guarantee of double jeopardy irrelevant, superfluous or redundant when it decreed that a court's constitutional analysis of double jeopardy is identical to and derivative from its statutory analysis of legislative intent. *Hunter,* 459 U.S. at 369-74 (Marshall, J., dissenting); Peter Westen, *The Three Faces of Double Jeopardy: Reflections on Government Appeals of Criminal Statutes,* 78 Mich. L. Rev. 1001, 1025 (1980). Professor Westen proposes that the double jeopardy clause operate as a presumption against finding that state law intends multiple punishments; the presumption can be overcome by clear and unmistakable evidence that the state law intends the offenses and the punishments to be cumulative. 78 Mich. L. Rev. at 1026.

of the victim or public, and rules of statutory construction.[8]

In this case the defendant engaged one time in one form of proscribed conduct against one victim. The interest protected in both statutes is the same—freedom from non-consensual sexual contact. Both statutes deal with a victim whose ability to give informed and meaningful consent to sexual contact is impaired: a victim under 12 years of age; a victim who is unconscious. Nothing in the legislative history of the sexual assault laws demonstrates that the legislature intended to punish a defendant twice for one touching when the victim was under two disabilities which precluded meaningful and informed consent. Applying the rule of strictly construing criminal statutes to safeguard the defendant's rights, or the rule of lenity,[9] I conclude that any doubt concerning the legislature's intent should be resolved against turning a single act into an opportunity for multiple punishments. In sum, the language and legislative history of the statutes, the nature of the proscribed conduct, the similarity of the two statutory offenses and their addressing the same interests of the public and the victim, and the rules of statutory construction all lead to the conclusion that the legislature intended one punishment for the two overlapping statutory offenses and that the legislature did not view the offenses as so significantly different as to deserve separate punishments.

---

[8]*State v. Kuntz,* 160 Wis. 2d 722, 467 N.W.2d 531 (1991); *State v. Bohacheff,* 114 Wis. 2d 402, 338 N.W.2d 466 (1983); *State v. Gordon,* 111 Wis. 2d 133, 330 N.W.2d 564 (1983); *Missouri v. Hunter,* 459 U.S. 359 (1983).

[9]*State v. Bohacheff,* 114 Wis. 2d 402, 417, 338 N.W.2d 466 (1983); *State v. Morris,* 108 Wis. 2d 282, 289-90, 322 N.W.2d 264 (1982).

Over the years the legislature has adopted a multitude of statutes prohibiting the same or overlapping courses of conduct. This multiplicity of statutes governing the same or overlapping conduct gives prosecutors broad discretion in choosing which crimes to charge. The approach taken by the majority, however, changes the legislatively adopted means of facilitating prosecution into a means of punishing accuseds multiple times for the same act. The majority's approach increases the potential for governmental harassment, oppression, and abuse. I do not think the legislature intended to create this outcome. The courts should not cumulate punishments for the accused's single act in the absence of a clear and definitive directive from the legislature.

For the reasons set forth, I dissent.

I am authorized to state that CHIEF JUSTICE NATHAN S. HEFFERNAN joins this dissenting opinion.