COURT OF APPEALS
DECISION
DATED AND FILED

November 8, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos. 2021AP804-CR**
**2021AP805-CR**
**STATE OF WISCONSIN**

Cir. Ct. Nos. 2017CF3795
2018CF137

**IN COURT OF APPEALS**
**DISTRICT I**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JOHN ANTHONY JACKSON,

DEFENDANT-APPELLANT.

APPEALS from judgments and orders of the circuit court for Milwaukee County: JOSEPH R. WALL, Judge. *Affirmed.*

Before Brash, C.J., Donald, P.J., and White, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. In this consolidated appeal, John Anthony Jackson appeals from judgments convicting him of two counts of trafficking of a child, one count of human trafficking, one count of second-degree sexual assault of a child, one count of soliciting a child for prostitution, and one count of physical abuse of a child. Jackson also appeals from orders denying in part his postconviction motion.

¶2 On appeal, Jackson contends that: (1) his conviction for human trafficking and one of his convictions for child trafficking were multiplicitous; (2) the circuit court erroneously instructed the jury that Jackson could be convicted of child trafficking if he transported a child, and the error was not harmless; and (3) newly discovered evidence entitles him to a new trial. For the reasons discussed below, we reject Jackson's arguments, and affirm.

## BACKGROUND

¶3 Jackson was charged with seven different crimes relating to three children—Angela, Melanie, and Greta—in two separate complaints.[1] In Milwaukee County Circuit Court case No. 2017CF3795, the State charged Jackson with five counts involving Angela: (1) child trafficking; (2) human trafficking where the trafficking was done by causing or threatening to cause bodily harm; (3) second-degree sexual assault of a child who had not attained the age of sixteen years; (4) soliciting a child for prostitution; and (5) physical abuse of a child intentionally causing bodily harm.

---

[1] For confidentiality purposes, we adopt the pseudonyms used by Jackson to refer to the victims.

2

¶4    In Milwaukee County Circuit Court case No. 2018CF137, the State charged Jackson with two counts of child trafficking. The first count alleged that Jackson knowingly attempted to recruit Greta, a child, for the purpose of a commercial sex act. The second count alleged that Jackson knowingly transported Melanie, a child, for the purpose of a commercial sex act.

¶5    The circuit court joined both cases for trial. The jury found Jackson guilty of all counts as charged. Jackson filed a motion for postconviction relief. Relevant to this appeal, Jackson contended that: (1) the child trafficking counts which involved Melanie and Greta should be dismissed because the circuit court improperly instructed the jury that trafficking could be committed by transporting a child, and to the extent that Jackson's objection was forfeited, trial counsel was ineffective; (2) Jackson could not be convicted of both child trafficking of Angela and human trafficking of Angela; and (3) Jackson was entitled to a new trial based on newly discovered evidence.

¶6    The circuit court granted in part, and denied in part, the postconviction motion. The circuit court granted Jackson's request to dismiss the child trafficking count involving Melanie. The circuit court denied the remainder of Jackson's claims. The circuit court found that the inclusion of the "transportation modality" in the jury instructions for the count involving Greta constituted harmless error. Next, the circuit court found that child trafficking and human trafficking were not identical in law and fact, and Jackson failed to meet his burden of demonstrating that the legislature did not intend cumulative punishments. In addition, the circuit court found that Jackson had not met the criteria for showing newly discovered evidence.

¶7 Jackson now appeals from the part of the order denying him relief. Additional relevant facts are discussed below.

## ARGUMENT

### I. Multiplicity

¶8 Jackson first argues that his conviction for human trafficking, involving Angela and his conviction for child trafficking involving Angela are multiplicitous.

¶9 "Multiplicity arises where the defendant is charged in more than one count for a single offense." *State v. Rabe*, 96 Wis. 2d 48, 61, 291 N.W.2d 809 (1980). "[M]ultiplicitous charges are impermissible, because they violate the double jeopardy provisions of the state and federal constitutions." *Id.* Whether two offenses are multiplicitous is a question of law that we review *de novo*. *State v. Brantner*, 2020 WI 21, ¶8, 390 Wis. 2d 494, 939 N.W.2d 546.

¶10 When reviewing a multiplicity claim, a two-step test is used. *State v. Davison*, 2003 WI 89, ¶¶42-45, 263 Wis. 2d 145, 666 N.W.2d 1. First, we examine whether the offenses are identical in law and fact. *Id.*, ¶43. Second, we examine whether the legislature intended to allow multiple punishments. *Id.*, ¶45.

¶11 To start, Jackson observes that the two offenses at issue involve the same person (Angela), the same time period, and the same address. Even if we were to assume that the offenses are identical in fact—and we emphasize we are not making that finding here—the offenses are not identical in law. Each offense requires proof of an element that the other does not. *See id.*, ¶41 (stating that "[a]s a general proposition, different elements of law distinguish one offense from another when different statutes are charged").

¶12 Child trafficking requires proof that the individual trafficked was a child,[2] and was trafficked for the purpose of a commercial sex act. WIS. STAT. § 948.051(1) (2015-16).[3] In contrast, human trafficking does not require that the individual trafficked was a certain age. *See* WIS. STAT. § 940.302. Human trafficking is also not limited to trafficking for the purpose of a commercial sex act, but includes trafficking "for the purposes of labor or services." Sec. 940.302(2)(a)1. In addition, human trafficking requires proof that the defendant engaged in certain types of acts, including "causing or threatening to cause bodily harm," "using or threatening to use force or violence," or "using any scheme, pattern, or other means to directly or indirectly coerce, threaten, or intimidate any individual." Sec. 940.302(2)(a)2. Thus, child trafficking and human trafficking are not the same in law.

¶13 Having concluded that Jackson's convictions are not the same in law, we next examine whether the legislature intended to prohibit multiple punishments. *See Davison*, 263 Wis. 2d 145, ¶45. If the offenses are different in law or fact, the defendant bears the burden of overcoming the presumption that the legislature intended to authorize multiple punishments. *State v. Ziegler*, 2012 WI 73, ¶62, 342 Wis. 2d 256, 816 N.W.2d 238.

¶14 To determine legislative intent we analyze four factors: "(1) all applicable statutory language; (2) the legislative history and context of the statute;

---

[2] A child is a person who has not attained the age of eighteen years. *See* WIS. STAT. § 948.01(1).

[3] All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

(3) the nature of the proscribed conduct; and (4) the appropriateness of multiple punishment for the conduct." *Davison*, 263 Wis. 2d 145, ¶50.

¶15 We first examine the applicable statutory language. Jackson focuses on the language in the human trafficking statute, WIS. STAT. § 940.302(2)(a). The human trafficking statute states "[e]xcept as provided in s. 948.051 [the child trafficking statute], whoever knowingly engages in trafficking is guilty of a Class D felony[.]" According to Jackson, the "except as provided" language means "don't charge here" and instead charge under the child trafficking statute. We disagree.

¶16 As the State suggests, the "except as provided" language simply means that there is another way that a defendant may be found guilty of trafficking. If the legislature intended to prohibit a court from sentencing a defendant for both human trafficking and child trafficking, the legislature could have said so. *See Southport Commons, LLC v. DOT*, 2021 WI 52, ¶32, 397 Wis. 2d 362, 960 N.W.2d 17 ("The legislature is presumed to 'carefully and precisely' choose statutory language to express a desired meaning." (citation omitted)). For example, the legislature could have expressly stated that a person shall not be convicted under both the human trafficking statute and the child trafficking statute. *Cf.* WIS. STAT. § 939.72 (prohibiting convictions for both inchoate and completed crimes). Alternatively, the legislature could have designated one of the offenses as a lesser included offense and prohibited a court from entering a conviction for both crimes. *See* WIS. STAT. § 939.66(1)-(7) (stating that "[u]pon prosecution for a crime, the actor may be convicted of either the crime charged or an included crime, but not both").

¶17 Next, we consider the legislative history and the context. The legislature created both the human trafficking statute and the child trafficking statute in 2007 Wisconsin Act 116, §§35, 37. An accompanying Wisconsin Legislative Council Act Memo references both crimes, but does not include any language indicating that multiple punishments are prohibited or explain the "except as provided" language. Thus, we conclude that the legislative history and context does nothing to overcome the presumption that the legislature intended multiple punishments.

¶18 Finally, we examine the nature of the proscribed conduct and the appropriateness of multiple punishments.[4] Here, each statute addresses different interests. Child trafficking focuses on prohibiting children from being trafficked. *See* WIS. STAT. § 948.051(1). In contrast, human trafficking prohibits any individual from being trafficked by the use of violence, threats, coercion, or other types of specified behavior. *See* WIS. STAT. § 940.302(2)(a). Thus, the legislature could have thought it appropriate to convict and punish a defendant for both offenses—trafficking a child and trafficking using violence, threats, coercion, or other types of behavior. *See **Davison***, 263 Wis. 2d 145, ¶99; ***State v. Selmon***, 175 Wis. 2d 155, 159, 165-67, 498 N.W.2d 876 (Ct. App. 1993) (rejecting a multiplicity challenge to a defendant's convictions for second-degree sexual assault of a child and second-degree sexual assault with the use of force because the legislature had recognized two distinct groups of victims—those assaulted through the use of force and those assaulted due to age).

---

[4] In multiplicity analyses, oftentimes the analysis of the nature of the proscribed conduct and the appropriateness of multiple punishments overlap. *See **State v. Davison***, 2003 WI 89, ¶98, 263 Wis. 2d 145, 666 N.W.2d 1. Such is the case here.

¶19    Therefore, for the reasons stated above, we conclude that Jackson has not overcome the presumption that the legislature intended multiple punishments.

## II.    Child Trafficking Jury Instruction

¶20    During trial, the circuit court instructed the jury that child trafficking is committed "by one who knowingly recruits, entices, provides, obtains, harbors, or *transports* any child for the purpose of commercial sex acts."    (Emphasis added).

¶21    The State does not dispute that the circuit court erred when it included the word "transports" in the list of ways that Jackson could have trafficked Greta.    Transporting was not included in the definition of child trafficking under WIS. STAT. § 948.051(1) until May 29, 2017.  *See* 2015 Wis. Act 367, §§ 8m, 10.    The State alleged that Jackson had trafficked Greta in November 2016, prior to the amendment.

¶22    Jackson argues that the circuit court's error was not harmless.  The State responds that Jackson forfeited his right to challenge the jury instruction by failing to object, and as a result, Jackson's claim should be analyzed as an ineffective assistance of counsel claim.

¶23    We agree with the State that Jackson forfeited his jury instruction claim.  Any objections to alleged errors in the proposed jury instructions must be made at a jury instruction conference.  *See* WIS. STAT. § 805.13(3) (stating that the "[f]ailure to object at the conference constitutes a [forfeiture] of any error in the proposed instructions"); *State v. McKellips*, 2016 WI 51, ¶47, 369 Wis. 2d 437, 881 N.W.2d 258.

8

¶24     We also agree with the State that this claim should be analyzed as an ineffective assistance of counsel claim.  Our supreme court has stated that "the court of appeals has no power to reach an unobjected-to jury instruction because the court of appeals lacks a discretionary power of review." ***State v. Trammell***, 2019 WI 59, ¶25, 387 Wis. 2d 156, 928 N.W.2d 564; *see also* ***State v. Erickson***, 227 Wis. 2d 758, 766, 596 N.W.2d 749 (1999) (stating that when counsel does not object, "the normal procedure in criminal cases is to address [forfeiture] within the rubric of the ineffective assistance of counsel").

¶25     To establish ineffective assistance of counsel, a defendant must prove both that counsel's performance was deficient and that the defendant was prejudiced by the deficient performance.  ***Strickland v. Washington***, 466 U.S. 668, 687 (1984).  To prove prejudice, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ***Id.*** at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." ***Id.***  We need not address both prongs of the ***Strickland*** test if the defendant does not make a sufficient showing on one of the prongs. ***Id.*** at 697.

¶26     When deciding whether a defendant is entitled to an evidentiary hearing based on an ineffective assistance of counsel claim, we first independently determine "whether the motion on its face alleges sufficient material facts that, if true, would entitle the defendant to relief." ***State v. Ruffin***, 2022 WI 34, ¶27, 401 Wis. 2d 619, 974 N.W.2d 432.  "Whether the record conclusively demonstrates that the defendant is entitled to no relief is also a question of law we review independently." ***State v. Spencer***, 2022 WI 56, ¶23, 403 Wis. 2d 86, 976 N.W.2d 383 (citations omitted).  "If the record conclusively demonstrates the defendant is

not entitled to relief, the circuit court has the discretion to decide whether to hold a hearing, which we review for an erroneous exercise of discretion." *Id.*

¶27 Here, the record conclusively demonstrates that Jackson was not prejudiced by trial counsel's failure to object to the inclusion of "transports" in the jury instruction. The information, the arguments of the parties, and the evidence presented at trial, all focused on whether Jackson had recruited Greta.

¶28 The information alleged that Jackson "did knowingly attempt to recruit a child for the purpose of [a] commercial sex act." In both the opening and closing instructions, the circuit court instructed the jury that Jackson was charged with human trafficking in count six of the information based on the allegation that Jackson "did knowingly attempt to recruit a child, [Greta]." Likewise, the verdict form instructed the jury to determine whether Jackson was guilty or not guilty of "Attempted Trafficking of a Child as charged in Count Six of the information."

¶29 Moreover, the closing arguments also focused on whether Jackson attempted to recruit Greta. In its opening statements, the State asserted that Greta "is going to talk to you about how [Jackson] recruited or tried to get her to work for him." Similarly, in closing argument, the State stated several times that the charge involving Greta was for "attempting to recruit[.]" The State explained that "[t]he charge is not that [Jackson] actually trafficked [Greta]. It is that he attempted to recruit her for commercial sex acts, and the testimony supports that." Similarly, the defense argued in opening and closing that there was not any evidence that Jackson recruited Greta.

¶30 In addition, the evidence at trial focused on Jackson's attempt to recruit Greta. Angela testified that Jackson "proposition[ed]" Greta for prostitution dates. Subsequently, Greta testified that Jackson wanted her to be part

10

of his team and make money. Greta understood that Jackson was "talking about selling [herself.]" Greta testified that she rejected Jackson's invitation.[5] Thus, given the information, the arguments of the parties, and the evidence at trial, there is not a reasonable probability that the jury would have acquitted Jackson had the word "transports" been excluded from the jury instruction. *See Strickland*, 466 U.S. at 694.

¶31 Accordingly, we conclude that the record conclusively shows that Jackson is not entitled to relief, and the circuit court properly denied his postconviction motion without an evidentiary hearing. *Spencer*, 403 Wis. 2d 86, ¶23.

### III. Newly Discovered Evidence

¶32 At trial, Detective Sarah Blomme testified that she executed a search warrant at Jackson's residence and recovered "about eighteen phones or parts of phones." Detective Blomme testified that, based on her experience working on sex trafficking investigations, it is common for a trafficker to have multiple cell phones. Blomme explained that traffickers use multiple cell phones to avoid being tracked and to direct the girls engaging in commercial sex acts.

¶33 Jackson's postconviction motion included a report from an investigator who interviewed Vernell Bullock after Jackson's conviction. Bullock stated that he had been friends with Jackson for "almost his entire life," and prior

---

[5] We note that at trial Greta testified that Jackson and Angela picked her up from her mother's residence and took her to Jackson's residence. There was no evidence, however, that Jackson transported Greta for the purposes of a prostitution date during the day-and-a-half that she was at Jackson's residence.

to Jackson's arrest, visited Jackson at his home a few times per month. Bullock stated that Jackson was "infatuated with cell phones and electronics," he liked to buy, sell, and trade cell phones, and he worked on cell phones as a hobby. Bullock further said that he saw cell phones, extra parts, and repair kits for phones at Jackson's home, and that people would come to Jackson for repairs and to buy used phones. Jackson contends that this information constitutes newly discovered evidence.

¶34    To obtain an evidentiary hearing based on newly discovered evidence, a defendant must show by clear and convincing evidence that:

> (1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking the evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative.

*State v. McAlister*, 2018 WI 34, ¶31, 380 Wis. 2d 684, 911 N.W.2d 77.

¶35    If a defendant satisfies his burden on all four of these elements, the circuit court must then determine "whether a reasonable probability exists that a different result would be reached in a trial." *State v. Avery*, 2013 WI 13, ¶25, 345 Wis. 2d 407, 826 N.W.2d 60 (citation omitted). "A reasonable probability of a different result exists if there is a reasonable probability that a jury, looking at both the old and the new evidence, would have a reasonable doubt as to the defendant's guilt." *Id.*

¶36    As the circuit court found, Jackson has failed to demonstrate that Bullock's statement constitutes newly discovered evidence. First, Jackson was negligent in discovering the evidence. *See McAlister*, 380 Wis. 2d 684, ¶31. Jackson does not dispute Bullock's statements that they were longtime friends, that Bullock came over to Jackson's house a few times per month, and that

Bullock knew of Jackson's interest in phones. Jackson does not offer any facts explaining why he did not call Bullock or other people familiar with Jackson's phone business to testify at trial.

¶37    Second, Bullock's statement was cumulative. Newly discovered evidence is cumulative when "it tends to address 'a fact established by existing evidence.'" *Id.*, ¶37 (citation omitted). At trial, Angela testified that Jackson bought phones and would get them fixed so he could sell them. Angela later testified that some of the phones he would fix and some of the phones "he would just leave sit around the house." In addition, Angela specifically denied that the phones had anything to do with prostitution activities. Thus, we conclude that Bullock's statement is merely cumulative to the evidence presented at trial.

¶38    Therefore, Jackson has not shown by clear and convincing evidence that Bullock's statement constituted newly discovered evidence. *Id.*, ¶31. Accordingly, the circuit court properly denied Jackson's newly discovered evidence claim without an evidentiary hearing.

## CONCLUSION

¶39    In sum, we reject Jackson's argument that the human trafficking count involving Angela and the child trafficking count involving Angela are multiplicitous. We also conclude that Jackson is not entitled to relief based on the child trafficking jury instruction, or Bullock's statement.

*By the Court.*—Judgments and orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

13